IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GREGORY SCHOLL,

    Plaintiff,

v.

MIAMI VALLEY POLISHING, LLC,

    Defendant.

Case No. 3:19-cv-210

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. #23)

---

Plaintiff, Gregory Scholl ("Scholl" or "Plaintiff"), has filed a Complaint against his employer, Defendant Miami Valley Polishing, LLC ("MVP" or "Defendant"), alleging interference under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq. Scholl argues that he was terminated by MVP for FMLA absences from March 2, 2019, through March 24, 2019. MVP asserts that Scholl's absences during this time were not entitled to FMLA leave and that, even if they were, he failed to give sufficient information that would have alerted Defendant that FMLA leave was being sought.

This matter is before the Court pursuant to a Motion for Summary Judgment filed by MVP, Doc. #23. Plaintiff has filed a response opposing the motion, Doc. #41, and MVP has filed a reply, Doc. #44. For the reasons set forth below, Defendant's motion is overruled.

## I. Background Facts

MVP is an Ohio corporation with its principal place of business located in Piqua, Ohio. Doc. #34, PageID#715. It supplies polished aluminum components to the truck, automotive and travel trailer industries and employs fifty or more full-time employees at its main plant in Piqua, Ohio. Doc.#31, PageID#311. To track employee attendance, MVP uses a point-based attendance policy. If an employee needs to miss work, he is required to call MVP thirty minutes before his shift begins. If an employee fails to call in or come to work, he receives two attendance points for each "no-call show and no-show." Doc. #31-1, PageID#461 and 456-457; Doc. #31, PageID##346-348. If an employee is absent from work on consecutive days for the same reason, he receives only one point for the absence. *Id.*, PageID#347. Employees who accumulate nine or more points within a calendar year are terminated. All attendance points are removed from the employee's record at the beginning of each new year. *Id.*, PageID#451. Although the employee is not required to state a reason when reporting a work absence, if one is given by him, either in person or in a recorded message, it is summarized by MVP and written in the employee's attendance record under a section entitled "Comments" Doc. #31, PageID##340-341. This section of the attendance record is a summary and not intended to be a verbatim report of what was said by the employee as the reason for his absence.

Although there is some confusion of Scholl's dates of prior employment with MVP, most recently he worked at MVP from approximately 2016 until he was

2

terminated for absenteeism on March 25, 2019. Doc. #34, PageID#715-716. His last job at MVP was as a "Polisher," working Monday through Friday from 5:00 a.m. to 1:30 p.m. He also worked some mandatory Saturdays. Doc. #31, PageID##329 and 407. As a Polisher, Scholl operated a machine called a pedestal grinder with a back-stand. His job required him to stand for significant periods of time throughout his shift and also required him to walk around the production floor on a consistent basis to obtain materials and supplies. Doc. #29, PageID#226; Doc. #41-1, PageID#852. Although MVP did not require a Polisher to wear steel-toed boots, closed-toed shoes were required. Doc. #29, PageID#228-229; Doc. #31, PageID#354. In his position as a Polisher, Scholl wore work boots.

On Friday night, March 1, 2019, Plaintiff, while at home, hit his foot on a case of water bottles, fracturing his fifth toe. Doc. #33, PageID#542. Because he was scheduled to work the next day, a Saturday, starting at 5:00 a.m., he called MVP's main line at 4:30 a.m. He left a message with his employer stating that he believed he broke his toe and could not work. *Id.*, PageID#543. Although Plaintiff's cell phone records indicate that his call to MVP lasted 57 seconds, Doc. #31, PageID#390, on his attendance record for March 2, 2019, it states only that he "called off sick." *Id.*, PageID#391. Scholl received one point for this absence. Doc. #31, PageID#377.

Plaintiff's next scheduled work day was Monday, March 4, 2019. The pain and swelling in his foot continued and he was unable to get his work boot on his foot. He called MVP on Monday morning, March 4, 2019, and left a message that

3

he could not work because his "toe was still messed up, swelling, bruised up." *Id.*, PageID#544. The phone call lasted 56 seconds. Doc. #31, PageID#391. He also stated that he could not get his work boot on his foot. *Id.* He received no points for lack of attendance on that day. *Id.*, PageID#378.

On Tuesday, March 5, 2019, at 5:11 a.m., Plaintiff called MVP's main line and left a message stating that he could not work that day due to his broken toe. Doc. #41-1, PageID#853. MVP's records, however, indicate that Plaintiff gave no reason and he was given a point for this absence. Doc. #25, PageID#115; Doc. #31-2, PageID#489. On that same day, Scholl made an appointment with his primary care provider, Dawne Macke, APR-CNP ("Nurse Macke"), an Advanced Practice Nurse Practitioner. Doc. #41-2., PageID##853 and 5. This was the first available date she was able to see Plaintiff for his foot. *Id.*

Nurse Macke saw Plaintiff on March 5, 2019, examined his toe and noted that it was "swollen" and that it had "some bruising." Doc. #27, PageID##168-169 and 173. On a pain scale, with "three plus" being the most painful, she rated Plaintiff's pain in his toe as "two[,] plus tenderness." *Id.*, PageID# 194. Scholl told Nurse Macke that his job was polishing aluminum, he was required to move around a lot and his work was "hard physical labor." Doc. #33, PageID##550-551. She told Scholl to wear a "post[-]op shoe" for his broken toe, since it would relieve the pain in his toe and it would put the toe in its correct position. Doc. #27, PageID#201. Plaintiff stated that Nurse Macke told him to stay off his foot as much as possible. Doc. #33, PageID#577. No pain medication was prescribed,

4

although his medical chart stated that he was taking Aleve. *Id.*, PageID#170. Plaintiff's chart also stated that he had bronchitis in late February 2019. *Id.*, PageID##35-36. Nurse Macke gave Scholl a medical note on Wilson Health Medical Group stationery dated March 5, 2019, excusing him from work from March 2 through March 10, 2019, with March 11, 2019, as the date that he "may return to work." Doc. #33, PageID##577 and 547-548. Her note did not indicate why she was excusing Scholl from work, but did state that he would have no restrictions after returning to work. The March 5, 2019, medical note provided a telephone number that could be called "[I]f you have further questions regarding this patient's health." Doc. #40, PageID#827.

Although Nurse Macke was unsure if her March 5, 2019, medical note excusing Plaintiff from work was given because of the bronchitis that he had seven days prior or because of Plaintiff's broken toe, she stated that bronchitis typically resolves in seven to ten days. *Id.*, PageID#194. She testified that she did not know what Plaintiff's job was at MVP, but she did know that he said he could not get his work boot on his foot. *Id.*, PageID#183.

Following his appointment with Nurse Macke, Plaintiff went to MVP and gave Nurse Macke's March 5, 2019, medical note to the owner, Matthew Powers ("Powers"). Scholl told him that he needed to be off work, because he broke his toe and could not wear his work boot or stand for extended periods of time. Doc. #33, PageID##547-548. When he handed the note to Powers on March 5, 2019, Plaintiff states he was wearing the post-op shoe that Nurse Macke recommended

5

and was using one crutch. *Id.* MVP did not assess any points for Scholl's absences from March 6 through March 10, 2019. Scholl testified that his post-op shoe or boot would not fit inside of his work boots. Doc. #33, PageID#24.

Although Plaintiff was scheduled to return to work on March 11, 2019, he was still in pain. He called MVP that day and left a message at 4:08 a.m., stating that he could not return to work due to pain and swelling in his broken toe and could not get his work boot on his foot. Doc. #41-1, PageID#853-854. Telephone records indicate that Plaintiff's call to the main number lasted 57 seconds. Doc. #31, PageID##389. MVP, however, assessed Plaintiff two points for a "no-call and no-show." Doc. #31-2, PageID#489.

On March 12, 2019, Scholl called MVP and left a message, stating that he could not return to work because of his broken toe and that he could not get his work boot on his foot. Doc. #41-1, PageID#854. The Comments on Plaintiff's attendance record for that day states "can[']t put shoe on." Doc. #31-2, PageID#489. He was assessed one attendance point on his record for that day. *Id.* Also, on March 12, 2019, Plaintiff states that he saw Nurse Macke "to have my toe evaluated" and complained to her that he could not get his foot in his work boot, because his "foot was still broken." Doc. #33, PageID#569; Doc.#41-1, PageID#854. Nurse Macke "evaluated" Plaintiff's foot and told him she would write a note for him to be off work. Doc.#41-1PageID#854. Although Nurse Macke has no record of a March 12, 2019, office visit with Plaintiff, MVP did receive a fax on March 13, 2019, on "Wilson Health" stationery signed by someone on her behalf. The fax,

6

also dated March 13, 2019, was entitled "Certificate to Return to Work/School" ("Certificate"). Doc. #31, PageID#399. It stated that "Gregory Scholl was under my care from 3-2-19 to 3-18-19" and will be able to return to work "on 3-19-19." Doc. #40, PageID#828. The Certificate also states that the reason for Plaintiff's absence is "due to illness." No job restrictions are referenced. *Id.*

On March 13, 2019, Plaintiff called MVP and left a message stating that he could not return to work because of his broken toe and that he still could not get his work boot on his foot. Doc. #41-1, PageID#854. MVP did not assess any points on Plaintiff's attendance record for his absences from March 13 through March 18, 2019.

On March 19, 2019, Plaintiff called MVP and left a message, stating that he could not work due to the pain in his toe and could not wear his work boot or stand on his foot for the amount of time needed to perform his position as a Polisher. Doc. #41-1, PageID#854. Plaintiff talked to Ernie Powers, President, and told him that his "foot was still broke" and that he could not work. Doc. #33, PageID#565. Because of the continued pain in his toe, on this same date, Plaintiff contacted Nurse Macke. His medical chart shows an "Encounter #2" with Plaintiff. She ordered an x-ray of his foot. Doc. #40, PageID#820. The x-ray, performed on March 19, 2019, indicated that his fifth toe was fractured. Doc. #40, PageID#823, Doc. #27, PageID##20 and 22. MVP assessed Plaintiff two attendance points for the March 19, 2019, absence writing "No Call No Show – Said he did call in." Doc.#31-2, PageID#489.

On March 20, 2019, Scholl stated that he could not work due to his broken toe, and called MVP and left a message indicating that he could not return to work because of his broken toe. Doc. #41-1, PageID#854; Doc. #27, PageID#176. That afternoon, Nurse Macke's office faxed MVP a note, stating that Plaintiff should be excused from work from March 18, 2019 through March 24, 2019, and could return to work on March 25, 2019. Doc. #40, PageID#829. The March 20, 2019, medical note also stated that MVP could call the "Wilson Health Medical Group" if it had any questions concerning Plaintiff's health. *Id.* Like the March 5, 2019, note and the Certificate dated March 13, 2019, the March 20, 2019, note from Nurse Macke did not state the reason for Plaintiff's absence. Also, the medical note did not indicate if there would be any restrictions on the type of work Plaintiff could do when he returned. MVP assessed Scholl one attendance point on his record noting "A Call off-No Reason." Doc. #31-2, PageID#489.

Nurse Macke testified that she did not receive any calls from MVP, concerning Plaintiff's absences, although she did not know if his employer called in and spoke with someone else in the practice. Doc. #27, PageID#195. She also testified that she had never had someone with a broken toe off work for three weeks, because they could not put their work boot on their foot and that whether a patient returns to work with a broken toe is at the patient's discretion. Doc#27, PageID##199-200. Nurse Macke, however, only gives notes for a patient to be off work if she has seen a patient and determined that it is medically necessary for

him not to be at work. *Id.*, PageID##193-194. At no time did MVP provide Plaintiff with a medical certification form to complete, Doc. #31, PageID#401.

On March 25, 2019, Plaintiff returned to work and was told by MVP that he was terminated under its attendance policy for missing work. Doc. #41-1, PageID#855. Prior to March 2, 2019, Plaintiff had three points on his attendance record. Doc. #31-2, PageID#489. Scholl was not paid for the time he was off work from March 2, 2019, through March 24, 2019, and lost approximately two weeks of paid vacation. Doc. # 41-1, PageID#855.

## II. Motion for Summary Judgment

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998). In determining whether a genuine dispute of material fact exists, a court need only consider the

materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the Court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

III. **Legal Analysis**

A. **Introduction – FMLA Interference Claim**

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612 (a)(1)(D). In this case, Scholl's sole claim against MVP is for interference with his rights under the FMLA. An "entitlement" or "interference" claim arises under 29 U.S.C. § 2615(a)(1) "[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, . . . regardless of the intent of the employer." *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 384–85, (6th Cir. 2017) (quoting *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012) (alteration in original) (internal quotation marks omitted)).

To prevail on an FMLA interference claim, Scholl must show that: (1) he was an eligible employee as defined under the FMLA; (2) MVP was an employer

under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave MVP notice of his intention to take leave; and (5) MVP denied him FMLA benefits to which he was entitled. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). The FMLA is not a strict liability statute and an employee seeking relief for FMLA interference must also establish that the employer's violation caused him harm. *Id.* at 508.

In this case, Defendant contends that there is no genuine issue of material fact that Plaintiff has failed to establish a *prima facie* case of FMLA interference and Plaintiff's claim must be dismissed.[1] It asserts that Plaintiff was not entitled to FMLA leave because Scholl: (1) did not have a "serious health condition" that made him "unable to perform one or more of the essential functions" of his job pursuant to 29 C.F.R. § 825.200(a)(4), and (2) did not give MVP sufficient information to put it on notice that he was absent for a serious health condition.[2]

The Court will analyze these elements.

---

[1] Absent direct evidence, the Court analyzes an FMLA interference claim based on circumstantial evidence applying the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973) and *Tex. Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089; *Wallace v. Edward W. Sparrow Hosp. Ass'n,* 782 F. App'x 395, 401 (6th Cir. 2019) (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012)) ("We analyze an FMLA interference claim based on circumstantial evidence using the McDonnell-Douglas burden-shifting approach."). In this case, however, Defendant is not asserting any "legitimate, non-discriminatory reason" unrelated to the exercise of FMLA rights for termination but is, instead, only challenging the existence of a *prima facie* case of interference under the FMLA. Accordingly, the Court need not engage in the burden-shifting analysis.

[2] The parties do not dispute that MVP and Scholl satisfy the statutory requirements for an FMLA-covered employer and eligible employee, respectively. See 29 U.S.C. §§ 2611(2)(A) and 2611(4); See also Doc. #7, PageId #18-19.

## B. Genuine Issues of Material Fact Exist as to Whether Plaintiff Was Entitled to Leave Under the FMLA

MVP asserts that "a broken little toe" is not a "serious health condition" because (1) there "is no credible evidence" that Scholl was incapacitated "for more than three consecutive calendar days;" (2) the FMLA regulations for "continuing treatment" are not met; and (3) there is no medical assessment that Scholl's broken toe prevented him from working. Viewing the facts in Plaintiff's favor, as the Court is required to do on a motion for summary judgment, a genuine issue of material fact exists such that a reasonable jury could conclude that Scholl's broken toe was a "serious health condition" under the FMLA regulations.

A "serious health condition" entitling an employee to leave under the FMLA includes an "injury" that involves inpatient care or "continuing treatment by a health care provider." 29 C.F.R. § 825.113(a). "A serious health condition involving continuing treatment" includes "[a] period of incapacity of more than three consecutive, full calendar days" and "[t]reatment two or more times, within 30 days of the first day of incapacity . . . by a nurse under direct supervision of a health care provider." 29 C.F.R. § 825.115(a)(1).

Under the FMLA regulations, "incapacity" is defined as the "inability to work . . . due to the serious health condition," 29 C.F.R. 825.113(b), and "treatment includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition." 29 C.F.R. 825.113(c).

A genuine issue of material fact exists as to whether Plaintiff was incapacitated for more than three consecutive full calendar days. As a Polisher, MVP has admitted that Plaintiff was required to stand for significant periods of time throughout his shift and to wear closed-toe shoes. He testified that, after March 2, 2019, his foot and toe were swollen and he was in pain. On March 5, 2019, Nurse Macke noted in her chart that Plaintiff's foot was swollen. She told him to stay off his feet as much as possible and her chart states that he should "get a post[-]op shoe to help with pain." She further testified that the post-op shoe would help put his toe in its correct position and, on March 5, 2019, she wrote a medical note to MVP on Wilson Health Medical Group stationery excusing him from work from March 2, 2019, through March 10, 2019. On March 12, 2019, MVP noted in Plaintiff's attendance record that he could not get his shoe on his foot. Nurse Macke also faxed a Certificate to MVP, dated March 13, 2019, stating that Plaintiff was under her care from March 2, 2019, through March 18, 2019, and that he would be able to return to work on March 19, 2019. Finally, on March 20, 2019, Nurse Macke sent a third note to MVP, excusing Plaintiff from work from March 18, 2019, through March 24, 2019.

Despite this testimony, Defendant contends that there was "no credible evidence" that Plaintiff was incapacitated. MVP asserts that Nurse Macke testified that she would have expected Plaintiff's toe to heal in a week to ten days, she had never taken a person off work for a broken toe and that, with respect to returning to work for a broken toe, she leaves it up to the patient's discretion. Nurse Macke,

14

however, also testified that she only gives notes for a patient to be off work, if she has seen a patient and determined that it is medically necessary for him not to be at work. Based on this testimony, there exists a genuine dispute as to a material fact of whether Plaintiff was incapacitated as a result of the fracture of his toe.

In addition to establishing incapacity, Plaintiff must also show that he received treatment two or more times within 30 days of the first day of incapacity. 29 C.F.R. § 825.115(a)(1). The FMLA defines treatment to include examinations and evaluations. 29 C.F.R. § 825.113. Both parties agree that Scholl had an appointment with Nurse Macke on March 5, 2019. Additionally, although Nurse Macke's chart for Plaintiff differs from his testimony, since it does not show a second office visit on March 12, 2019, there is no dispute that she ordered an x-ray for Plaintiff on March 19, 2019, and he had an x-ray taken of his foot taken on that date at Wilson Memorial Hospital. The x-ray constitutes an "evaluation" and thus a "treatment" pursuant to 29 C.F.R. § 825.113(c). Based on this testimony, a genuine dispute as to a material fact exists as to whether Plaintiff met the FMLA regulations concerning "continuing treatment" for his broken toe, and was incapacitated as a result of the fracture of his toe.

Defendant's final argument, that there is no medical assessment that Plaintiff's broken toe prevented him from working, also raises genuine issues of material fact. Plaintiff provided MVP with notes from Nurse Macke dated March 5 and March 20, 2019, excusing him from work along with a Certification dated March 13, 2019. This information, along with Plaintiff telling Powers and Ernie

Powers that he was unable to work due to his broken toe, gave Defendant an opportunity to request additional medical information from Plaintiff, pursuant to 29 C.F.R. § 825.305(b),[3] or to obtain from him a Certification pursuant to 29 U.S.C. § 2613(a) that included medical facts concerning his condition and a statement that he was unable to perform his job duties. Defendant, however, did not request any medical information from Plaintiff or from his medical provider.

### C. Genuine Issues of Material Fact Exist as to Whether Plaintiff Gave MVP Notice of His Intention to Take FMLA Leave

To satisfy the notice requirement under a claim for FMLA interference, an employee must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). The notice should cause the employer to "inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, [sic] and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c). In determining the element of notice, "[T]he critical question is whether the information imparted to the employer is sufficient

---

[3] (b) Timing. In most cases, the employer should request that an employee furnish certification at the time the employee gives notice of the need for leave or within five business days thereafter, or, in the case of unforeseen leave, within five business days after the leave commences. The employer may request certification at some later date if the employer later has reason to question the appropriateness of the leave or its duration. The employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification.

to reasonably apprise it of the employee's request to take time off for a serious health condition." *Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir.2005) (quoting *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir.1998)). "The notice requirement is not a difficult burden for the employee to meet," *Tilley v. Kalamazoo Cnty. Rd. Comm'n*, 654 Fed. Appx. 675, (6th Cir. 2016) (summary judgment in favor of defendant reversed since question of fact existed of whether timely notice was given to employer), but it is "is an intensely factual determination." *Donald*, 667 F.3d at 761.

In this case, Scholl testified that he provided notice to MVP by leaving voicemail messages stating that he had a broken toe, that it was painful and/or swollen, that he could not stand on it and that he was unable to work. He further testified that he personally met with Powers, MVP's owner, on March 5, 2019, while wearing a post-op shoe and using one crutch. He told Powers that he needed to be off work because of his broken toe, could not wear his work boot or stand for extended periods of time. Plaintiff provided MVP with two medical notes and a Certification from Nurse Macke for the time period of March 2, 2019, through March 24, 2019. On March 19, 2019, Plaintiff also spoke with Ernie Powers, the President of MVP, and told him that his "toe was still broke" and that he was unable to work due to his broken toe. Based on these facts, which Defendant contests, a genuine issue of material fact exists requiring the Court to overrule Defendant's motion for summary judgment.

Finally, Defendant argues that it had an "honest belief" that Plaintiff's termination was proper. Doc. #23, PageID#82. In *Banks v. Bosch Rexroth Corp.*, 610 Fed. Appx. 519 (6th Cir. 2015), however, the Court stated that "the honest belief rule is not applicable to claims where the employer's frame of mind is not at issue, FMLA interference claims for example." *Id.* at 806. (citing *Tillman*, 545 Fed. Appx. 340, 351). Accordingly, whether MVP had an honest belief that Plaintiff's termination was proper is irrelevant in this case.

## IV. Conclusion

For the above stated reasons, Defendant's Motion for Summary Judgment, Doc. #23, is overruled.

Date: April 30, 2021

(tp - per Judge Rice authorization after his review)

**WALTER H. RICE**
**UNITED STATES DISTRICT JUDGE**

18